## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **OLIVER ORDOR** | * | |
| *Plaintiff* | * | |
| v. | * | Case No.: RWT 10cv2015 |
| **HOEGH AUTOLINERS** | * | |
| *Defendant.* | * | |

## MEMORANDUM OPINION AND ORDER

On June 23, 2010, Plaintiff, Oliver Ordor, filed suit against Defendant, Hoegh Autoliners[1] alleging Breach of Contract, Conversion, and Unjust Enrichment. *See* Compl. ECF No. 2. On May 16, 2011, Defendant filed a Motion for Summary Judgment. *See* ECF No. 17. This matter is now fully briefed and ready for adjudication.

## Background

Plaintiff is in the business of exporting used trucks and vans to West Africa, specifically the ports of Cotonu, Benin, and Lagos, Nigeria. Plaintiff owned eight used automobiles.[2] In July of 2007, Plaintiff wanted to ship these vehicles to Nigeria and Benin. Plaintiff hired the services of a freight forwarder, Seaspeed Oversees Shipping Company ("Seaspeed") to arrange

---

[1] Plaintiff also filed suit against Defendant Seaspeed Overseas. However, the Court dismissed all claims against Seaspeed oversees for failure to effect service within the 120 days as required by Federal Rule of Civil Procedure 4(m). *See* Order, ECF No. 11.

[2] The vehicles were identified as follows: 1) 1992 Mazda MPV VIN: JM3LV5232N0410025; 2) 1990 Volvo 4 door, VIN: YVIAA884711403618; 3) 1990 Toyota Camry, VIN: JT2VV22W3LO1113I9; 4) 1989 Nissan Maxima, VIN: JNIHJOIP7KT204388; 5) 1995 Mazda MX6, VIN: IYVGE3ID755338319; 6) 1993 Honda Civic, VIN: IHGEG8652PL027276; 7) 1991 Toyota Corolla, VIN: JT2AE91A9M3439938; and 8) 1991 Honda Civic, VIN: IHGED3643ML025602.

shipments with the ocean carrier. Seaspeed contacted Defendant Hoegh Autoliners, the ocean carrier, to obtain shipment of the vehicles. The Defendant dealt only with Seaspeed in arranging the shipment of the vehicles, and Seaspeed was identified as the "shipper" on the bills of lading issued by Hoegh Autoliners.

Prior to the shipment of his vehicles, Plaintiff did not have any direct contact with Hoegh Autoliners, except an isolated instance in which he needed Hoegh Autoliners assistance in correcting a vehicle identification number. Hoegh Autoliners never advised Plaintiff of any agency relationship between Hoegh Autoliners and Seaspeed.

In accordance with customary practice, Hoegh Autoliners gave a booking number and due date for each of the vehicles to the Shipper Seaspeed. The cargo booked must be received at the designated loading point by the given due date, and it is up to the Shipper Seaspeed to get the cargo to the loading point on or before the given due date.

Three of the cars were loaded onto the vessel MN VERONA on August 14, 2007. Of the three cars on the MN VERONA, one of those cars was carried to Lagos, Nigeria and the other two went to Cotonou, Benin. On September 10, 2007, four cars were loaded onto the vessel MN CATTLEYA ACE, and all four were carried to Cotonou, Benin. The remaining vehicle was loaded onto the vessel MN GRAND DUBAI and carried to Cotonou, Benin.

Once the vehicles were loaded on their respective ships, Hoegh Autoliners issued eight original bills of lading, one per vehicle. Each Bill of Lading also incorporated the United States Carriage of Goods by Sea Act (COGSA):

> Notwithstanding any language to the contrary in this Bill of Lading, if goods are shipped from the United States, this Bill of Lading shall have effect subject only to the provisions of the United States Carriage of Goods by Sea Act, approved April 16, 1936 (hereafter COGSA) which shall supersede all other acts,

statutes, conventions, and treatises and which shall alone be incorporated herein.

Each Bill of Lading also contained a Himalaya Clause:

> Without prejudice to the generality of the forgoing provisions, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Carrier or to which the Carrier entitled shall also be available and shall extend to protect every such servant, agent or sub-contractor of the Carrier acting as aforesaid.

> For the purpose of the foregoing provision of this clause, the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants, agents or sub-contractors from time to time and all such persons shall to this extent be or deemed to be parties to the contract evidenced by the Bill of Lading.

> The terms <<agent>>, <<servant>>, and <<sub-contractors>> shall include independent agents, servants and sub-contractors employed both directly and indirectly by the Carrier and shall include the agent, servants or sub-contractor's own sub-agents and sub-contractors.  It is hereby expressly agreed that the vessel owner (in case vessel is not owned by the Carrier) bareboat charter (in case vessel not bareboat chartered by Carrier) technical and commercial managers, employment agencies, Master and crew that performs any of the Carrier's obligations under this Bill of Lading shall be regarded as sub-contractors of the Carrier

Each bill of lading was marked "Freight Pre-Paid" to expedite the clearing process in the discharge ports.  Hoegh Autoliners' agent at the discharge port will only release cargo to the consignee upon production of the original bills of lading.  Hoegh Autoliners will only deliver the original bills of lading to shippers like Seaspeed once the freight on the cargo is paid.  Thus, when a consignee produces an original bill of lading to Hoegh Autoliners' agent at the discharge port, that agent can be assured that Hoegh Autoliners was paid.

On October 20, 2007, Plaintiff made an electronic payment of $9,700.00 to Shipper Seaspeed's bank.  Seaspeed did give Plaintiff documents, but these documents were not the original bills of lading, but rather Seaspeed's versions of the bills of lading.  Hoegh Autoliners never delivered the original bill of lading to the Shipper Seaspeed, because Seaspeed never paid Hoegh Autoliners.  Moreover, Hoegh Autoliners never authorized Seaspeed to issue any bills of lading and Seaspeed's versions of the bill of ladings were not acceptable to secure release from the discharge port.

Armed with Seaspeed's versions of the non-original bills of lading, Plaintiff travelled to Nigeria in late October 2007 or early November 2007 to expedite the release of his vehicles.  Without the original bills of lading, Hoegh Autoliners' agent would not release the vehicles.  Plaintiff contacted Hoegh Autoliners' office in Baltimore and was informed that Shipper Seaspeed had not paid Hoegh Autoliners.  Plaintiff was offered the opportunity to pay the freight to release his vehicles, but declined do so.  Hoegh Autoliners was never paid the $9,720.00 it was owed for transporting the vehicles.  There is no evidence that the original bills of lading have been released.  Plaintiff claims, without any factual support, that the vehicles were auctioned.

## Discussion

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).   "A mere scintilla of proof ... will not suffice to prevent summary judgment." *Peters v. Jenney,* 327 F.3d 307, 314 (4th Cir. 2003).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50. (citations omitted).   At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris,* 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

A. Plaintiff's State Law Claims are Preempted by COGSA

U.S. Carriage of Goods by Sea Act (COGSA) applies to the instant action because the shipment originated from the United States.   COGSA governs the terms of bills of lading issued by ocean carriers engaged in foreign trade.   *See* 74 Pub. L. No 520; 49 Stat. 1207 (1936), as amended by 97 Pub. L. No. 31, § 12(146), 95 Stat. 151, 166 (1981) (codified at 46 U.S.C. § 30701 note).   By its terms, COGSA only applies to shipments from United States ports to ports of foreign countries and vice versa.   *Id.*   COGSA also applies to the instant matter because Hoegh Autoliners explicitly elected to follow COGSA in its bill of lading, and used a Himalaya Clause to extend COGSA to its agents.

Under Fourth Circuit law, COGSA preempts state common law claims relating to goods subject to a bill of lading, which are lost or damaged prior to delivery.   *Wemhoener Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d 734, 740 (4th Cir.1993).   However, COGSA "shall not be construed as superseding" other laws "insofar as [those other laws] relate to the duties, responsibilities of the ship or carrier prior to the time when the goods are loaded or after the time

they are discharged from the ship." *See* 46 U.S.C. §30701 note.[3]  Here Plaintiff's primary

contention is that his eight vehicles were not delivered, and thus the provisions of COGSA apply

and preempt any state law claims.[4]

### B. Plaintiff's State Law Claims are Barred by the Statute of Limitations Contained in COGSA

Having determined that COGSA applies and preempts Plaintiff's state law claims, the

next question is whether Plaintiff's claims are time-barred.  COGSA provides that "the carrier

and the ship shall be discharged from all liability in respect of loss or damage unless suit is

brought within one year after delivery of the goods or the date when the goods should have been

delivered."  *See D & H Distributing Co., Inc. v. Crowley American Transport, Inc*., 1998 WL

1108932, *2 (D. Md.1998) (quoting 46 U.S.C. § 30701 note).[5]

Plaintiff's claims are time-barred.   At best, Plaintiff's vehicles should have been

delivered in November of 2007 when Plaintiff arrived in Nigeria and when the last vehicle was

discharged from the ship.  Plaintiff filed suit on June 23, 2010, which is more than a year from

---

[3] As Judge Blake explained in *D & H Distributing Co., Inc. v. Crowley American Transport*, Inc., 1998 WL 1108932, *2 (D. Md.1998), courts have not established a single definition of delivery:

> Some courts have concluded that "delivery" occurs when cargo
> leaves a ship's slings, irrespective of whether it is placed in the
> hands of the consignee (or its agent). Other courts have held that
> delivery occurs only when the consignee has a reasonable
> opportunity to inspect the goods for damage.

*Id.* (quoting *Servicios– Espoarma v. Industrial Maritime Carriers, Inc*., 135 F.3d 984, 987–88 (5th Cir.1998)).

[4] Under either definition of the term, the vehicles were not "delivered" to Plaintiff because Plaintiff or his agent neither accepted the goods nor had a reasonable opportunity to inspect them.

[5] The Bill of Lading also contains a one year time limitation on claims.

the date that the vehicles should have been delivered.  Because Plaintiff filed suit more than a year after delivery should have taken place, his claims are time-barred.[6]

Accordingly, it is, this 8th day of March, 2012, by the United States District Court for the District of Maryland,

**ORDERED**, that Defendant's Motion for Summary Judgment [ECF No. 17] is **GRANTED**; and it is further

**ORDERED**, that judgment for costs be entered in favor of Defendant on the Plaintiff's complaint; and it is further

**ORDERED**, that the Clerk of the Court close the case.

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

[6] Defendant also argues that it should not be held liable for its refusal to release the vehicles because it had a legal right to retain this cargo.  In support of its argument, Defendant cites to *Hawkspere Shipping Company Limited v. Intamex S.A.*, 330 F.3d 225 (4th Cir. 2004).  In that case, a carrier, Hawkspere Shipping Company, filed a claim in rem against such cargo and claim in personam against shippers, Intamex SA and Amalco, seeking to recover unpaid freight.  The Shippers filed a counterclaim contesting the maritime lien and alleging that they paid a cargo consolidator International Commodities Transport Services (ICTS).

This case is not directly on point because, here, Hoegh Autoliners never filed suit in rem against the eight cars and in personam against Plaintiff Oliver Ordor and, here, Plaintiff Oliver Ordor never filed a counterclaim contesting the lien and stating he paid Seaspeed.  Because Plaintiff framed the issue as a breach of contract and conversion claim, the Court frames the instant action as one of preemption and statute of limitations under COGSA.